IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HEAVEN FIRESTONE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. 1:21-cv-79 |
| | § | |
| | § | |
| CRAWFORD ELECTRIC SUPPLY | § | |
| COMPANY, INC. | § | JURY DEMANDED |
| | § | |
| Defendant. | § | |

**COMPLAINT**

Plaintiff HEAVEN FIRESTONE ("Plaintiff") complains of CRAWFORD ELECTRIC SUPPLY COMPANY, INC. and for her cause of action would show the Court as follows:

**I.**

**INTRODUCTION**

1. This action seeks damages, attorneys' fees, expert fees, taxable costs of the court, pre- judgment and post-judgment interest as a result of civilly wrongful conduct in violation of the laws of the United States and the State of Texas, including Title VII of the Civil Rights Act of 1964, as amended, and the Texas Commission on Human Rights Act.

**II.**

**PARTIES**

2. Plaintiff HEAVEN FIRESTONE is a resident of Hays County, Texas.

3. Defendant CRAWFORD ELECTRIC SUPPLYCOMPANY, INC. is an entity which may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## III.

## JURISDICTION AND VENUE

4. This is a civil action seeking redress for violation of rights guaranteed to the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Texas Commission on Human Rights Act in accordance with those statutes' provisions against sex discrimination and retaliation. More specifically, this action seeks monetary damages and all other appropriate relief to which Plaintiff is entitled to under the law on account of discrimination on the basis of sex and on account of retaliation for participating in activity protected under Title VII and the Texas Commission on Human Rights Act.

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1367.

6. This action lies in the United States District Court for the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred substantially in Travis County, Texas.

## IV.

## CONDITIONS PRECEDENT

7. All conditions precedent have been performed or have occurred.

## V.

## STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

8. Ms. Firestone was hired by the Defendant on August 2, 2019, as a pre-fabrication worker and apprentice electrician. On her first day of work, she and several other employees had to watch a video discussing sexual harassment and discrimination. During the video, Ms. Firestone's supervisor, Dustin, laughed at the video, and said that he was offended by not being

able to discriminate against people. The HR person, Sarah Justice, told Dustin to stop joking around because that was making it take longer, because she had to keep stopping the video.

9. Once Ms. Firestone started working, there were constant jokes about gender and sex in the workplace. She was the only woman working in the warehouse. The male employees joked about her being a lesbian, saying that she hadn't had the right "dick" in her life. Jokes about sex and women were constant, and she was told that she was a distraction in the warehouse because she was a woman. Ms. Firestone tried to brush these comments off, but they made her angry too, and she told Dustin and the other male employees that. When male employees would make sex jokes or jokes about women, Dustin would say things like, "Be careful! She's going to go to HR!" About a month after Ms. Firestone started working, Dustin told her that he was surprised she had stayed as long as she had, because "women don't last long here." He also posted a "Hurt Feelings Report" and asked her if she had seen what he posted for her.

10. While she was working on the floor, Dustin would yell at Ms. Firestone about things like wearing sweatpants and wearing headphones, while he would do nothing when male employees did the same thing. She was also assigned to the harder and more physically demanding jobs, while male employees were permitted to do the easier ones. She was criticized for taking too long in the bathroom, though the bathroom she had to use was much farther away from where the men's bathroom was in the warehouse.

11. On Ms. Firestone's 60-day review, in or around the beginning of October 2019, Dustin told her that she worked really hard and was a good team member, but that she needed to work on "rolling with the punches," and to stop getting so offended. He said she was being too sensitive because "boys will be boys."

12. Ms. Firestone was supposed to be considered for a raise after she had been with the company for 90 days. However, when the 90 day period was over, Dustin would not speak with her about the raise. When she finally got her 90 day review on January 8, 2020, approximately two months late, she learned that the male employees who were doing the same job as she was were making more money. Ms. Firestone has also since learned that male employees have been allowed training on other equipment (such as the forklift) that she was not allowed to have, and that Dustin gave an Apprentice License card to a male employee who was hired after Ms. Firestone before he gave Ms. Firestone hers.

13. The day after her review, on January 9, 2020, Ms. Firestone met with Dustin and Sarah Justice in HR to express her concerns about gender discrimination in Defendant's workplace. She discussed the fact that the male employees were being paid more than she was. She also told them that she felt like Dustin was harder on her than he was on the male employees, and that he made special rules that Ms. Firestone had to follow, but that the male employees were not required to follow. Sarah and Dustin both told Ms. Firestone that what other people were getting paid was none of her business.

14. Blake Livingood replaced Dustin as Ms. Firestone's official supervisor in late October or early November 2019, though Dustin continued to interact with her and to act as her supervisor. Dustin continued to behave very aggressively toward her and would make reports to Blake Livingood about her. On one occasion, she was in the breakroom doing yoga during her break, and Dustin came in and started yelling at her, asking her why "the fuck" was she in there and "what the fuck" was she doing. On another occasion, she was working in the warehouse with a mask on, and Dustin asked me "what the fuck" she was doing in there with a mask on.

15. On or around February 20, 2020, Ms. Firestone was ill in the morning, and called Mr. Livingood to let him know that she was going to be late for work. She arrived at work but was still sick. She took her temperature and told Mr. Livingood that she had a fever. She then went to the restroom and threw up. When she returned, Mr. Livingood asked her if she needed to go home. She told Mr. Livingood that she was afraid to go home because she thought Dustin would be angry about it. Mr. Livingood told her to go to home, so she did.

16. Ms. Firestone called in sick on Friday of the same week as well. She was told to bring in a doctor note when she returned to work on Monday. When she returned to work on February 24, she was written up for calling in late on Thursday, even though Defendant knew she was sick that morning. On February 26, she went in and spoke to Ms. Justice. Ms. Firestone told her that she thought she was being targeted for discipline because of the previous concerns she had brought up about being discriminated against based on her gender. She told Ms. Justice that every time she had complained that she was being treated differently or discriminated against, Ms. Firestone felt like Ms. Justice brushed it off or told her that Dustin didn't really mean what he said.

17. On February 28, 2020, Defendant terminated Ms. Firestone's employment. Ms. Justice told Ms. Firestone that her employment was terminated, saying that "unfortunately it's just not going to work out."

## VI.

## CAUSES OF ACTION

**COUNT ONE - DISCRIMINATION AND RETALIATION UNDER TITLE VII**

18. Plaintiff filed a charge of discrimination against Defendant with the United States Equal Employment Opportunity Commission (EEOC) on March 5, 2020, within 180 days of her

termination on February 28, 2020. Plaintiff received a notice of the right to sue from the EEOC dated October 29, 2020, which is within 90 days of the filing of this Complaint.

19. Plaintiff was an employee within the meaning of Title VII and belongs to a class protected under the statute, namely Plaintiff was discriminated against because of her gender and retaliated against for opposing gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e2(a)(1).

20. Defendant is an employer within the meaning of Title VII.

21. Title VII of the Civil Rights Act of 1964 states, in pertinent part, that, "(a) It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, becauseof such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

22. Defendant intentionally discriminated against Plaintiff because of her gender and her opposition to Defendant's discriminatory conduct in its treatment of Plaintiff.

23. Defendant intentionally discriminated against Plaintiff because of her gender (female) in violation of Title VII by subjecting Plaintiff to the events described above, including but not limited to subjecting Plaintiff to different terms and conditions of employment from her male peers and by terminating her employment. Defendant's decisions were motivated by Plaintiff's gender, and by Plaintiff's opposition to Defendant's discriminatory conduct. Plaintiff made a discrimination complaint and opposed a discriminatory practice by Defendant, and

suffered adverse employment actions as a result. The unlawful practices committed by Defendant were and are a direct cause of Plaintiff's damages, as more fully set forth below.

### COUNT TWO - DISCRIMINATION AND RETALIATION UNDER THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

24. <u>Discrimination.</u> The conduct of the Defendant towards Plaintiff, through its agents, employees, managers, and supervisors, as set forth above, among other activities constitutes discrimination on the basis of gender, in direct violation of §21.001, et. seq., Labor Code, Vernon's Texas Codes Annotated, which states, in pertinent part, that:

> An employer commits an unlawful employment practice if...the employer...discriminates against an individual...or...classifies an employee...in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any manner the status of an employee.

25. Plaintiff's gender was a determining or motivating factor in Defendant's employment decisions regarding Plaintiff as described above, including the decision to subject Plaintiff's to disparate terms and conditions of her employment and to terminate Plaintiff's employment. Plaintiff's gender moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff.

26. <u>Retaliation.</u> In addition, Defendant retaliated against Plaintiff for making discrimination complaints, for participating in a discrimination investigation or otherwise opposing gender discrimination by the employer. See Texas Labor Code §21.055. Plaintiff's discrimination complaints were a determining or motivating factor in Defendant's employment decisions regarding Plaintiff, as described above, including the decision to terminate Plaintiff's employment.

## VII.

## DAMAGES

27. As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future.

28. Defendant intentionally engaged in an unlawful employment practice by discriminating and retaliating against Plaintiff. Plaintiff additionally brings suit for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

29. The conduct committed by Defendant against Plaintiff is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiff. Therefore, Plaintiff additionally brings suit for punitive damages.

## VIII.

## ATTORNEYS' FEES AND EXPERT FEES

30. A prevailing party may recover reasonable attorneys' and experts' fees under Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act. Plaintiff seeks all reasonable and necessary attorneys' fees in this case from Defendant, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Plaintiff additionally brings suit for expert fees and all costs associated with the prosecution of this action.

## IX.

## JURY DEMAND

31. Plaintiff demands a trial by jury of all the issues and facts in this case and tenders herewith the requisite jury fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

1. The Court assume jurisdiction of this cause;

2. The Court award Plaintiff damages as specified above;

3. The Court award Plaintiff reinstatement or, in the alternative, front pay.

4. The Court award Plaintiff's reasonable attorneys' and expert fees and costs;

5. The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed.

Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

Respectfully submitted,

THE LAW OFFICES OF KELL A. SIMON
501 North IH-35, Suite 111
Austin, Texas 78702
(512) 898-9662 Telephone
(512) 368-9144 Facsimile


/s/ Kell A. Simon
Kell A. Simon
State Bar No. 24060888
ATTORNEY FOR PLAINTIFF